In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00060-CR
_____

JOSEPH CHRISTOPHER LEWIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 1A District Court
Tyler County, Texas
Trial Cause No. 12,519

**MEMORANDUM OPINION**

In a single issue, Joseph Christopher Lewis appeals his conviction for

aggravated sexual assault of a child for which he received a mandatory life sentence

in prison based on prior sexual offenses enhancing his sentence. *See* Tex. Penal Code

Ann. §§ 12.42(c)(2), 22.021(a)(1)(B)(ii), (a)(2)(B) (West Supp. 2018).[1] Lewis

---

[1] The amendments made to the Texas Penal Code after the commission of the
offense do not impact our resolution of the issue on appeal.

argues the trial court abused its discretion by not granting a mistrial under manifest necessity but rather improperly coercing the jury into reaching a verdict after it notified the trial court it was deadlocked. The State contends Lewis failed to preserve his issue, and even if the alleged error was preserved for review, the trial court did not improperly instruct the jury to continue deliberations. We agree with the State and affirm the trial court's judgment.

## Background

After hearing evidence from each party, listening to closing statements, and receiving the trial court's final instructions, the jury recessed at 2:58 p.m. for deliberation. At 4:35 p.m., the jury sent a note to the trial court requesting certain evidence. The trial court provided all the exhibits to the jury and requested they clarify the testimony they desired. At 4:54 p.m., the jury stated they wanted the testimony from the complaining witness. Soon thereafter, they were released for the day at 5:03 p.m.

The jury began its deliberations at 9:00 a.m. the next day. The jury then sent another note requesting testimony from another witness, to which the trial court asked the jury to specify what portion of the witness's testimony they wanted. At 11:46 a.m., the jury requested the witness's testimony in its entirety, and the trial court agreed to get it to the jury as soon as it could be transcribed. At 2:22 p.m., the

jury sent another note informing the trial court that they were "deadlocked at 7 guilty, 5 not guilty." The trial court stated it would read the "dynamite" charge[2] after assembling all the parties and the jury.

Once everyone was present in the court room, the trial court noted the jury had informed the court that it was deadlocked, and the court charged the jury as follows:

> . . . If you resolve this case — if you can resolve this case by your verdict, you should do so. I don't mean to say that any individual juror should yield his or her conscience and positive conviction but I do mean that when you're in the jury room, you should discuss this matter among yourselves carefully and listen to each other. Try, if you can, to reach a conclusion on the issue. It is your duty as jurors to keep your minds open to every reasonable argument. A juror should not have any pride or opinion and should avoid hastily forming or expressing an opinion. A juror should not, however, surrender conscientious views founded upon the evidence unless convinced by fellow jurors. I am satisfied that you have not — and I am satisfied that you have not deliberated sufficiently.

> At this moment I'm not going to accept your — the statement that you are deadlocked. I'm going to ask you to deliberate just a little bit longer. If you within a reasonable amount of time do not think that you're going to be able to come up with a verdict, then you need to let me know again.

The trial court then told the jury foreman to "try again," "[j]ust a little while — give it just another shot."

---

[2] A "dynamite" charge refers to a standard *Allen* charge. *See Allen v. U.S.*, 164 U.S. 492, 501 (1896).

A little over an hour later, at 3:44 p.m., the jury informed the court it was deadlocked "at guilty 11, not guilty 1." The trial court explained to the State and defense counsel it was considering asking the foreman, if given more time, would the jury be able to reach a verdict. The trial court asked counsel whether the parties had any suggestions. The State had no objection to the trial court's suggestion; Lewis's counsel stated, "I can't — I — what the situation is — I can't ask for the discharge of the jury. My client has to consent to that. I can't consent to that." At 3:50 p.m., after assembling the parties and the jury, the trial court informed the jury of the following:

> I have personally never — well, I've been a district judge for about two years, a little over two years. So I've presided actually in those two years over many cases for — you know, for a person who's been on the bench for two years so — but I do have to say that so far I've not had a jury that's hung up, not that it's — I'm certain it's going to happen in my career at some time.

> But I want to say this: Y'all are very close. You're very close to a verdict and I want to encourage you to try to keep an open mind and listen to one another because, you know, somebody else is going to have to come in here and do this if we can't, you know, come to some resolution. So I really do want to encourage you to spend just a few more minutes.

> I don't want — I'm not reading off anything. I'm just telling you that this is — it's — there's a lot to this and I don't want to say to you, you know, disobey your own conscience and your own — you know, your own heart but I would ask you to open your minds and really try hard to listen to one another and, if it's possible, to come up with a verdict. I do want y'all to spend a few more minutes, please, trying to

4

work through this. I'm not going to give up on y'all. So I'm going to give you a few more minutes.

. . . .

So anyway — but that's what I'm going to ask you to do. Please spend a few more minutes discussing and trying to keep an open mind and, if it's possible, to come up with a verdict. I sure hope you will. Okay.

Soon thereafter, at 4:12 p.m., the trial court informed the parties the jury had reached a verdict. The jury found Lewis guilty of aggravated sexual assault of a child.

**Analysis**

Initially, we note Lewis did not preserve his complaint that the *Allen* charges were coercive. To preserve an error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. Tex. R. App. P. 33.1(a). When a defendant does not object to the trial court's submission of an *Allen* charge, error is not preserved. *Thomas v. State*, 312 S.W.3d 732, 740 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (citing *Freeman v. State*, 115 S.W.3d 183, 186 n.2)) (finding failure to object to an *Allen* charge waives error). Lewis's counsel made no objection or statement regarding the trial court's first *Allen* charge. Concerning the trial court's second charge, the trial court informed the parties of its thoughts to again instruct the jury to continue its

5

deliberation. When the trial court asked for suggestions from the parties, defense counsel merely informed the trial court he could not ask for a mistrial without consent of his client, Lewis. At no time before or after the two *Allen* charges were given to the jury did Lewis object to the charges or request a mistrial. Accordingly, Lewis has not preserved any complaint about the *Allen* charges for appellate review.

Nonetheless, even if we were to consider the *Allen* charges given in this case, neither have been shown to be coercive. An *Allen* charge is a supplemental charge sometimes given to a jury that declares itself deadlocked. *See Allen v. U.S.*, 164 U.S. 492, 501 (1896). It reminds the jury if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee a second jury would find the issues any easier to resolve. *Id.*; *Howard v. State*, 941 S.W.2d 102, 123 (Tex. Crim. App. 1996). While such a charge is permissible in both federal and Texas courts, trial courts must carefully word the instruction and administer it in a non-coercive manner. *Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006).

The primary inquiry when considering the propriety of an *Allen* charge is its "coercive effect" on juror deliberations in its context and under the circumstances. *Howard*, 941 S.W.2d at 123 (citing *Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988)); *Freeman*, 115 S.W.3d at 186–87. An *Allen* charge that pressures jurors into reaching

a particular verdict or improperly conveys the court's opinion of the case is unduly coercive. *West v. State*, 121 S.W.3d 95, 107–08 (Tex. App.—Fort Worth 2003, pet. ref'd). Conversely, a charge that speaks to the jury as a whole and encourages jurors to reexamine their views without surrendering honest convictions is not coercive on its face. *Freeman*, 115 S.W.3d at 187.

Here, the charges addressed the entire jury, not any particular juror, and instructed the jurors to continue deliberating without doing violence to their conscience. The charges did not pressure jurors into reaching a particular verdict nor convey the trial court's opinion of the case in any way. The Court of Criminal Appeals and other sister courts have approved *Allen* charges containing similar language. *See Arrevalo v. State*, 489 S.W.2d 569, 571–72 (Tex. Crim. App. 1973); *Draper v. State*, 335 S.W.3d 412, 417 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *West*, 121 S.W.3d 108–09.

Because Lewis failed to preserve his sole issue on appeal, we overrule the issue and affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

7

Submitted on August 9, 2018
Opinion Delivered January 9, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.